UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANIMAL LEGAL DEFENSE FUND,
LISA DOWELL, and CHRISTINA MANOS-BOCEK,

    Plaintiffs,

    v.

BROOKE ROLLINS, Secretary, Department of Agriculture, et al.,

    Defendants.

Case No. 25-cv-461 (ACR)

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

# INDEX OF EXHIBITS

**A.**  2017 FSIS Guideline for Label Approval (Document Release at 0482-0483, 0488-0489, 0498-0500)

**B.**  2020 FSIS Guideline for Label Approval (Document Release at 0549-0550, 0555, 0565-0567)

**C.**  2024 FSIS Guideline for Label Approval, FSIS-GD-2024-0001, *available at* https://www.fsis.usda.gov/guidelines/2024-0001

**D.**  2016 Guideline on Documentation Needed to Substantiate Raising Claims for Label Submissions (Document Release at 0467-0481)

**E.**  2019 Guideline on Documentation Needed to Substantiate Raising Claims for Label Submissions (Document Release at 0525-0542)

**F.**  2024 Guideline on Documentation Needed to Substantiate Raising Claims for Label Submission, *available at* https://www.fsis.usda.gov/guidelines/2024-0006

**G.**  May 2018 Perdue Label Approval Form 7231-1 (Document Release at 0005-0008)

**H.**  May 2018 Perdue Label Application and Approval (Document Release at 0001-0017)

**I.**  Nov. 2018 Perdue Label Application and Approval (Document Release at 0018-0032)

**J.**  Sept. 2020 Perdue Label Application and Approval (Document Release at 0049-0070)

**K.**  July 2019 Signature Farms Label Application and Approval (Document Release at 0578-0591)

**L.**  Apr. 2018 Applegate Label Application and Approval

**M.**  2020 Edelstein Letter (Document Release at 0127)

Plaintiffs Animal Legal Defense Fund ("ALDF"), Lisa Dowell, and Christina Manos-Bocek (collectively, "Plaintiffs") respectfully submit this sur-reply, pursuant to the Court's recent Minute Order. *See* Minute Order (Oct. 17, 2025). Defendants argue, in their reply brief to support their motion to dismiss, that Plaintiffs' allegations as to the "existence of a policy" are "implausible" and attach a post-hoc 2022 agency letter to support their argument. Dkt. 23 at 8-9 & n.1. This is the first time Defendants have raised this argument.

The Complaint sufficiently alleges the existence of the Food Safety Inspection Service's ("FSIS") policy, pattern, and practice of categorically failing to review graphics and imagery on poultry labels. Defendants' argument ignores the weight of allegations in the Complaint, including FSIS guidelines that lack any directives to review graphics and imagery on labels, FSIS label approval documentation devoid of any evidence FSIS reviewed imagery and graphics on labels, and a 2020 letter from Rachel Edelstein, the Acting Assistant Administrator for Office of Policy and Program Development at FSIS, confirming FSIS has a policy and practice of not reviewing imagery and graphics on labels.

Plaintiffs' Complaint plausibly alleged the existence of FSIS's policy, especially at the motion to dismiss stage. On review of a Rule 12(b)(6) motion, courts must "treat the complaint's factual allegations as true [] and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citations omitted).

## ARGUMENT

### I. FSIS Guidelines Demonstrate How Defendants Do Not Review Imagery and Graphics on Labels.

Several FSIS guidelines reveal that Defendants lack the toolkit to review, and have a policy of not reviewing, graphics and imagery for consistency with the Poultry Products

1

Inspection Act ("PPIA"). The FSIS Guideline for Label Approval provides instructions on factual statements and claims on labels that are eligible for generic approval—and do not require review by FSIS for approval—and other "special statements or claims" which do require submission to FSIS for pre-market review. Dkt. 1 ¶¶ 70-75 ("Compl."). Plaintiffs are aware of three versions of the guideline: a 2017 Guideline for Label Approval, a July 2020 update, and a March 2024 update. All versions of the guideline place "pictorial designs, non-geographic emblematic designs or illustrations (e.g. . . . *illustrations of animals*)" in an appendix of "factual statements" that are generically approved and—therefore—do not require labels to be submitted to FSIS for review and approval. Ex. A, 2017 Guideline for Label Approval (Document Release at 0482-0483, 0488-0489, 0498-0500) (emphasis added) (attached); Ex. B, 2020 Guideline for Label Approval, (Document Release at 0549-0550, 0555, 0565-567) (attached); Ex. C, FSIS, Guideline for Label Approval March 2024 FSIS-GD-2024-0001, https://www.fsis.usda.gov/guidelines/2024-0001 (attached).[1]

Furthermore, FSIS's Guideline on Documentation Needed to Substantiate Raising Claims for Label Submissions (which provides guidance on substantiating animal raising claims on labels that must undergo pre-market review, as opposed to generically approved labels) does not

---

[1] The Court may take judicial notice of these reliable government documents, which are available through USDA's official online website. *See Levinson v. Islamic Republic of Iran*, 443 F. Supp. 3d 158, 170 n.15 (D.D.C. 2020) (citing *Detroit Int'l Bridge Co. v. Gov't of Can.*, 133 F. Supp. 3d 70, 85 (D.D.C. 2015), and *Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014)). The 2024 Guideline is available on FSIS's website: https://www.fsis.usda.gov/guidelines/2024-0001. The 2020 Guideline is linked in an FSIS July 24, 2020 Constituent Update and available on FSIS's website: https://www.fsis.usda.gov/news-events/news-press-releases/constituent-update-july-24-2020. The 2017 Guideline is linked in the August 18, 2017 and September 15, 2017 Constituent Updates on FSIS's website and is available at: https://www.regulations.gov/document/FSIS-2017-0040-0001. Defendants also produced the 2017 and 2020 Guidelines as part of their informal administrative record exchange pursuant to the Court's August 4, 2025, Minute Order.

address graphics or imagery on labels or describe the criteria FSIS uses to determine whether such imagery is misleading to consumers. *See* Compl. ¶¶ 73, 74. This Guideline was issued in 2016 and updated in 2019 and 2024. *Id.*; Ex. D, 2016 Guideline (Document Release at 0467-0481) (attached); Ex. E, 2019 Guideline (Document Release at 0525-0542) (attached); Ex. F, FSIS, Guideline on Documentation Needed to Substantiate Raising Claims for Label Submission (https://www.fsis.usda.gov/guidelines/2024-0006) (attached).[2]

These guidelines demonstrate that FSIS officials do not have the tools to review graphics and imagery for consistency with the PPIA. Rather, FSIS has a policy, pattern, and practice of approving labels without reviewing graphics and imagery depicting animal living conditions.

## II. Defendants' Approvals of Labels for Many Poultry Products Show a Categorial Absence of Graphics and Imagery Review.

Nowhere in the Perdue Fresh Line, Signature Farm, or Applegate label approvals available to Plaintiff at this stage in the proceedings does FSIS state that it reviewed graphics and imagery on the labels, let alone explain why such imagery is not false and misleading. Indeed, the label approval form FSIS utilizes, Form 7234-1, does not include a box for officials to note the agency reviewed graphics and imagery, despite having boxes for several other aspects of label review, including "[t]otal available labeling space," "[p]roduct formula," and "[p]rocessing procedures." Ex. G, May 2018 Perdue Label Form 7234-1 (Document Release at 0005-0008) (attached); *see also* Compl. ¶¶ 88-101, 118-121 (alleging Perdue label approval documentation).[3]

---

[2] The Court can consider "facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies" at the motion to dismiss stage. *Ward v. D.C. Dep't of Youth Rehabilitation Srvs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011). Plaintiffs explicitly referenced these Guidelines in the Complaint. Compl. ¶¶ 73, 74. The Court may also take judicial notice of these reliable government documents, which were included in Defendants' informal administrative record and are available on FSIS's official online website. *See Levinson,* 443 F. Supp. 3d at 170 n.15.

[3] The Court may consider facts alleged in the complaint and documents "incorporated by

3

FSIS approvals of many labels for poultry products are further evidence of FSIS's practice of categorically ignoring imagery and graphics on labels. *See* Compl. ¶¶ 95, 100-101, 117, 121, 128-129, 137-138. The label approval documents for Perdue Fresh Line, Signature Farms, and Applegate products include no reference to graphics, imagery, illustrations, pictures or any synonym, let alone the agency's review of them. For example, Perdue submitted a sketch label application in May 2018 for "Whole Chicken and Chicken Parts Blanket" for its Fresh Line that displayed a bucolic scene of chickens on a pasture outside of a barn, surrounded by plants and sunshine. Ex. H, May 2018 Perdue Label Application and Approval (Document Release at 0001-0017) (attached); Compl. ¶¶ 88-95.[4] In the agency's label approval documentation, there is no evidence that FSIS reviewed this misleading graphic or imagery. *Id*. Likewise, Perdue's subsequent Fresh Line label applications and approval documentation contained no indication that FSIS reviewed the labels' graphics or imagery. Ex. I, Nov. 2018 Perdue Label Application and Approval (Document Release at 0018-0032) (attached); Ex. J, Sept. 2020 Perdue Label Application and Approval (Document Release at 0049-0070) (attached); Compl. ¶¶ 95-101, 118-120.[5] Nor did FSIS consider the package of materials ALDF sent to FSIS in January 2020, which highlighted the misleading nature of Perdue's Fresh Line label imagery, when FSIS approved the September 2020 label application. *See* Ex. J; Compl. ¶ 121.

FSIS's policy, pattern, and practice of failing to review the graphics and imagery of poultry products extends to other product lines, including Signature Farms and Applegate. For

---

reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies." *Ward*, 768 F. Supp. 2d at 119.

[4] The Court may consider the May 2018 Perdue label application and approval documentation, which Plaintiffs discuss extensively in the Complaint. *See Ward*, 768 F. Supp. 2d at 119.

[5] The Court may consider the November 2018 and September 2020 Perdue Fresh Line label application and approval documentation, which Plaintiffs discuss at length in the Complaint. *See Ward*, 768 F. Supp. 2d at 119.

4

example, documentation for the approval of Signature Farms' "Chicken-Various Cuts" July 2019 label did not provide any evidence FSIS reviewed the label's graphics or imagery, which included a chicken outside on farmland. Ex. K, July 2019 Signature Farms Label Application and Approval (Document Release at 0578-0591) (attached); Compl. ¶¶ 128, 132.[6] Additionally, there is no indication that FSIS reviewed the imagery on a 2018 Applegate label for turkey breasts even though the sketch label depicted a turkey walking outdoors on grass: the application did not provide a field to evaluate label imagery and the FSIS employee who reviewed the label did not comment on the sketch label imagery. Ex. L, April 2018 Applegate Label Application and Approval (attached); Compl. ¶¶ 135-138.[7]

### III.  FSIS Acknowledged It Does Not Evaluate Graphics and Imagery on Labels.

In the context of FSIS providing no evidence of reviewing graphics and imagery in label approval documentation, and not having any toolkit to review graphics and imagery for consistency with the PPIA, ALDF received a letter on March 30, 2020, from Edelstein. Ex. M, 2020 Edelstein Letter (Document Release at 0127) (attached); Compl. ¶¶ 113-117.[8] The letter denied ALDF's request that FSIS refuse to approve Perdue's Fresh Line poultry labels, which ALDF contended included "imagery" that was "misleading and contrary to how the animals were raised." *Id.*; Compl. ¶¶ 111-117. Edelstein also confirmed FSIS has a policy and practice of not reviewing graphics and imagery on labels. She wrote, "[t]he photos, colors, and graphics

---

[6] The Court may take judicial notice of this reliable government document, as the document was contemporaneously created when the label application was approved and was in Defendants' informal administrative record exchange pursuant to the Court's August 4, 2025, Minute Order. *See Johnson v. Comm'n on Presidential Debates*, 202 F.Supp.3d 159, 167 (D.D.C. 2016).

[7] The Court can consider the April 2018 Applegate label application and approval documentation, as it was "alleged in the complaint." *See Ward*, 768 F. Supp. 2d at 119.

[8] The Court can consider the 2020 Edelstein Letter, as Plaintiffs referenced it in the Complaint and even quoted it at length. *See Ward*, 768 F. Supp. 2d at 119.

5

used on packaging are not considered labeling claims and do not make the product label false or misleading." *Id.*

At the motion to dismiss stage, Courts have liberally construed the existence of a policy, pattern, and practice of improper conduct by an agency. *See Citizens for Resp. and Ethics in Wash. v. U.S. Dep't of Justice*, 772 F.Supp.3d 1, 15 (D.C. Cir. 2025) (holding that whether a policy where an agency refused to provide certain records without conducting a case-by-case analysis "exists is a question for a later stage in this case [Plaintiff] . . . has carried its burden at the motion-to-dismiss stage."); *see also AFL-CIO v. Dep't of Labor*, 778 F.Supp.3d 56, 77 (D.D.C. 2025) (determining that the plaintiff sufficiently alleged the existence of an unwritten policy regarding the defendants' unauthorized disclosure of information to non-agency personnel in violation of the Privacy Act and found that statements made by leadership about granting access to agency systems, much like Edelstein's 2020 letter, were especially compelling). Plaintiffs' extensive allegations of a policy, pattern, and practice clear the bar at this stage.

### IV. Defendants' Post-Hoc 2022 Letter Is of No Value to the Court and Is Outweighed by Other Evidence.

Defendants only point to one document to support their argument that the "existence of a policy" is "implausible"—a post hoc letter from FSIS ("2022 Edelstein letter"). Dkt. 23 at 8-9 & n.1; Compl. ¶¶ 122-125. Not only does Circuit precedent render the post-hoc letter unreliable and of no value to the Court, but the 2022 Edelstein letter is outweighed by contrary materials that clearly demonstrate the policy existed.[9]

---

[9] In their opening brief, Defendants made no argument regarding the 2022 Edelstein letter and "[a]ssum[ed] as true that the Department does in fact have a 'policy, pattern, and practice of routinely approving poultry product label applications without consideration of the graphic matter or imagery on the labels required under the plain terms of the' Act." Defs.' Mot. (Dkt. 19) at 17-18 (quoting Compl.). Their argument on reply is inconsistent with their opening brief.

On April 20, 2022, FSIS wrote ALDF to "clarify" its March 30, 2020, letter. *Id*. The 2022 Edelstein letter stated that in the 2020 Edelstein letter, FSIS "intended to convey that the photos, colors, and graphics used on [the Perdue Fresh Line labels] are not considered labeling claims and did not make the product false or misleading." Dkt. 23-1. It asserted that FSIS complies with 9 C.F.R. § 412.1 and § 3.17.2(a)—two regulations requiring FSIS to review labels in their entirety. *Id*. The letter then contradicted the 2020 letter, stating that "FSIS did review the graphics and images" on Perdue's Fresh Line labels but determined that the illustrations were "merely marketing puffery." *Id*. It explained, "[a]s marketing puffery without any associated labeling claim, the Agency concluded that the Perdue labels were not false or misleading." *Id.*

The 2022 Edelstein letter's proclamation that FSIS is complying with the law is a bare assertion that occurred while ALDF's previous litigation over the same policy, pattern, and practice was pending. *See* Complaint, *ALDF v. Vilsack*, 1:21-cv-01539, Dkt. 1 (filed Jun. 8, 2021). Courts in this Circuit have routinely held that such post-hoc statements are of no value to the Court and inherently unreliable, especially at the motion to dismiss stage. *See, e.g.*, *Nat'l Ass'n for the Advancement of Colored People v. Trump*, 298 F. Supp. 3d 209, 237 (D.D.C. 2018) ("[B]ecause a reviewing court must judge the propriety of agency action solely by the grounds invoked by the agency, post hoc explanations that the agency did not articulate are insufficient.") (quoting *SEC v. Chenery Corp.*, 332 U.S. 194 (1947)); *see also Rodway v. U.S. Dep't of Agric.*, 514 F.2d 809, 816 (D.C. Cir. 1975) ("Courts have traditionally looked with hostility upon explanations of agency officials submitted in affidavit form during the course of litigation.") (collecting several Supreme Court cases).

The 2022 Edelstein letter's assertion that FSIS evaluates labels in their entirety and reviewed the graphics of Perdue Fresh Line labels—determining that they were "merely

7

marketing puffery" and therefore not false and misleading—contradicts the agency's record of label approvals. There is no mention of "marketing puffery" on any of the Perdue Fresh Line label approval documents, nor on label approval documents for Signature Farms and Applegate products. *See* Exs. H-L; Compl. ¶¶ 121, 125. There is no space in the approval documentation to evaluate the graphics or imagery of a label. Ex. G. FSIS guidelines do not mention graphics or imagery on labels or describe the criteria FSIS uses to determine whether such graphics and imagery are misleading to consumers. *See* Exs. A-C; Compl. ¶¶ 73, 74. Furthermore, the 2022 Edelstein letter's assertion that the graphics on Fresh Line labels were "merely marketing puffery" contradicts a 2019 consumer survey that ALDF had delivered to FSIS before the agency approved a Fresh Line label in 2020. *See* Compl. ¶ 112. In that survey, 29% of respondents interpreted the chicken labels to mean that chickens were "given access to a barnyard/pasture." *Id*. Nearly a third of consumer respondents did not find that label "puffery."

Moreover, the 2022 Edelstein letter's discussion of two PPIA regulations requiring FSIS to review labels in their entirety has no bearing on Plaintiffs' policy and practice claim. Plaintiffs do not contest the existence of these regulations. Instead, Plaintiffs claim Defendants follow a policy, pattern, and practice that is *contrary* to those regulations and their authorizing statute, and ask the Court to order Defendants to comply with such regulatory and statutory obligations. *See* Compl. ¶¶ 68-71, 140-150; Dkt. 21 at 1, 18; *see also Xie v. Kerry*, 780 F.3d 405, 406, 408-9 (D.C. Cir. 2015) (reversing dismissal of a claim that the Department of State engaged in an unwritten policy of illegally delaying review of visa applications in violation of temporal review requirements under the Immigration and Nationality Act).[10]

---

[10] The 2022 Edelstein Letter's inconsistency with the agency's contemporaneous approval actions may call for additional investigation, including discovery, into how FSIS based the letter's factual assertions.

## CONCLUSION

Plaintiffs have sufficiently alleged the existence of an FSIS policy, pattern, and practice of categorically failing to review imagery and graphics on labels, especially because this case is at the motion to dismiss stage, where the Court "must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow*, 216 F.3d at 1113. Accordingly, Plaintiffs respectfully request that the Court deny the motion to dismiss.

Dated: October 31, 2025

Respectfully submitted,

*/s/ Daniel H. Waltz*
Daniel H. Waltz (D.D.C. Bar No. D00424)
Mary Naughton (*pro hac vice* forthcoming)

ANIMAL LEGAL DEFENSE FUND
611 Pennsylvania Ave. SE #484
Washington, DC 20003
(707) 795-2533 ext. 1066
dwaltz@aldf.org

*Attorneys for Plaintiffs Animal Legal Defense Fund, Lisa Dowell, and Christina Manos-Bocek*